This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**CITIBANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STERNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-1,**

Plaintiff-Appellee,

v.                                                                      **NO. 33,945**

**MARGARET H. MARTINEZ,**

Defendant-Appellant,

and

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MEGASTAR FINANCIAL CORP.,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Violet C. Otero, District Judge**

Holland & Hart LLP
Larry J. Montaño
Santa Fe, NM

for Appellee

Cravens Law LLC
Richard H. Cravens, IV
Albuquerque, NM

for Appellant

# MEMORANDUM OPINION

**KENNEDY, Judge.**

{1}     Defendant Margaret H. Martinez appeals from the district court's grant of summary judgment and denial of Defendant's motion for reconsideration of summary judgment, entered on June 18, 2014, and June 20, 2014, respectively. On appeal, Defendant raises three arguments, contending that Plaintiff Citibank, N.A., as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2007-1, does not have standing to enforce the note and mortgage at issue in the present case. With regard to Defendant's argument that Plaintiff is not the owner of the right to enforce the note and is not the real party in interest, we hold that Plaintiff is the holder and entitled to enforce the note pursuant to the Uniform Commercial Code (UCC) and Rule 1-025(C) NMRA, permitting the original party to continue an action absent direction from the court to substitute or join a transferee of interest. With regard to Defendant's argument that less than the entire instrument was transferred to Plaintiff, so Plaintiff cannot enforce the note and mortgage, we hold that the undisputed facts show that the note was not split and that the note and mortgage were transferred to the same party in each instance, rendering Defendant's legal argument moot. Finally, with regard to Defendant's argument that, based on policy considerations, Plaintiff

should not be permitted to enforce the note and mortgage because it does not own the note and because the entire instrument has not been transferred to Plaintiff , we refer Defendant to our conclusions on the first two issues raised. Plaintiff is the holder of both the note and mortgage: As such it can pursue foreclosure against Defendant. We therefore affirm the district court's order granting summary judgment and order denying Defendant's motion for reconsideration.

**BACKGROUND**

{2}	On or about October 2, 2006, Defendant signed a promissory note payable to the order of original lender Megastar Financial Corporation (Megastar). To secure the note, on October 3, 2006, Defendant signed a mortgage identifying Megastar as lender and Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for lender, which mortgage pledged the property at issue in this case (the Property) as collateral.

{3}	In July 2012, Plaintiff filed its complaint in the Thirteenth Judicial District Court seeking foreclosure on the Property. In its complaint, Plaintiff alleged that it was "entitled to enforce the [n]ote and [m]ortgage." The complaint included as an attachment a copy of the note, indorsed by Megastar in blank. The complaint also included as an attachment a copy of the assignment of mortgage, whereby MERS, as nominee for Megastar, assigned the mortgage to Plaintiff.

{4}	On February 27, 2013, counsel for Plaintiff filed an affidavit of possession of original note, contending that counsel for Plaintiff is in possession of the original note that is the subject of the suit, attaching a true and correct copy of the original note as an exhibit to the affidavit. The copy attached to the affidavit matches the copy

attached to the complaint. Thereafter, on April 16, 2013, Defendant filed an affidavit in support of answer to complaint for foreclosure, and on May 1, 2013, she filed her answer to the complaint, generally denying all allegations in the complaint.

**{5}** Plaintiff filed a motion for summary judgment, and Defendant filed a response. Defendant also filed a motion to dismiss for lack of standing, essentially arguing that Plaintiff does not have standing to enforce the note and mortgage because the indorsement does not name Plaintiff as payee and because the note and mortgage were improperly split since the note names Megastar and an unnamed transferee while the mortgage names MERS and Plaintiff as assignee. After a hearing, the district court granted summary judgment in favor of Plaintiff and denied Defendant's motion to dismiss. Defendant filed a motion for reconsideration, alleging that *Bank of New York v. Romero*, 2014-NMSC-007, 320 P.3d 1, is "new controlling law, which Defendant believes mandates the dismissal of this matter with prejudice." Thereafter, the district court entered summary judgment, default judgment (against MERS), an order for foreclosure sale, and an order denying Defendant's motion for reconsideration. Defendant appealed the summary judgment order and order denying her motion for reconsideration.

**DISCUSSION**

**{6}** On appeal, Defendant argues that the district court erred in granting summary judgment in favor of Plaintiff and denying Defendant's motion for reconsideration. Defendant renews her arguments that Plaintiff did not have standing to bring the

4

foreclosure action, the district court lacked jurisdiction to hear the case, and the judgment is therefore void.

**Standard of Review**

**{7}** "We review the district court's decision to grant summary judgment de novo." *Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2016-NMCA-010, ¶ 7, 365 P.3d 8 (internal quotation marks and citation omitted), *cert. granted*, 2016-NMCERT-001, ___P.3d ___ (No. 35,512, Jan. 19, 2016). "Summary judgment is appropriate where the facts are undisputed, and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). "We review the facts and make all reasonable inferences from the record in favor of the nonmoving party." *Id.*

**Plaintiff Had Standing to Foreclose**

**{8}** Our standing calculus has changed, owing to the Supreme Court's recent opinion in *Deutsche Bank National Trust Co. v. Johnston (Deutsche Bank II)*, ___-NMSC-___, ___ P.3d ___ ( No. 34,726, Mar. 3, 2016). Clarifying its position, it held that "standing is not a jurisdictional prerequisite[,]" but that standing is subject to prudential rules in mortgage foreclosure cases. *Id.* ¶¶ 10, 12. Lack of standing is accordingly no longer a jurisdictional defect, but analogous to a defendant's assertion that the plaintiff has failed to state a legal cause of action; an issue that cannot be waived—may be made—anytime prior to the completion of a trial on the merits. *Id.* ¶ 16; Rule 1-012(H)(2) NMRA.

**{9}** *Deutsche Bank II*, did not change *Romero's* determination that "[i]n order to establish standing to foreclose, [Plaintiff] must demonstrate that [it] had the right to

5

enforce the note and the right to foreclose the mortgage at the time the foreclosure suit was filed." *Phoenix Funding, LLC*, 2016-NMCA-010, ¶ 15 (citing *Romero*, 2014-NMSC-007, ¶ 17).

**{10}** As this Court has recently reiterated, relying on principles from the UCC and our Supreme Court's opinion in *Romero*:

> Under New Mexico's [UCC], a promissory note is a negotiable instrument, which can be enforced by (1) the holder of the instrument; (2) a holder who does not possess the instrument and has the rights of a holder; or (3) a person who does not possess the instrument, but is entitled to enforce it pursuant to certain provisions of the UCC. The holder of the instrument is the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession. Accordingly, a third party must prove both physical possession and the right to enforcement through either a proper indorsement or a transfer by negotiation.

*Phoenix Funding, LLC*, 2016-NMCA-010, ¶ 16 (citing NMSA 1978, § 55-1-201(b)(21)(A) (2005); NMSA 1978, § 55-3-104(a), (b), (e) (1992); NMSA 1978, § 55-3-301 (1992), and *Romero*, 2014-NMSC-007, ¶¶ 20-21 (emphasis and internal quotation marks omitted)). In the present case, the note was originally payable to Megastar, not Plaintiff. Accordingly, we must determine whether Plaintiff provided sufficient evidence of how it became a holder of the note, either by indorsement or by a transfer. *See Phoenix Funding, LLC*, 2016-NMCA-010, ¶ 17.

**{11}** As set forth above, Plaintiff attached an indorsed copy of the note to the complaint, which matched the indorsed original of the note attached to Plaintiff's counsel's affidavit. The note included a blank indorsement. "A blank indorsement does not identify a person to whom the instrument is payable but instead makes it

6

payable to anyone who holds it as bearer paper." *Deutsche Bank Nat'l Tr. Co. v. Beneficial N.M. Inc. (Deutsche Bank I)*, 2014-NMCA-090, ¶ 10, 335 P.3d 217 (alteration, internal quotation marks, and citation omitted), *aff'd in part sub nom. Deutsche Bank II*. Defendant argues that, because "[t]here is no [i]ndorsement specifically to [Plaintiff] and [Plaintiff] never signed the [i]ndorsement," Plaintiff "never possessed all of the rights in the mortgage [and n]ote" and that "at best[,] transfer is ambiguous from the [n]ote." We disagree.

{12}    "Typically, the bearer of a note indorsed in blank is the holder of that note." *Id.*; *see also Romero*, 2014-NMSC-007, ¶ 26 ("[The] blank indorsement . . . established the [b]ank as a holder because the [b]ank [was] in possession of bearer paper[.]"). Thus, we conclude that, because Plaintiff was in possession of the note at the commencement of the case and the note was indorsed in blank, the district court correctly determined that Plaintiff was the holder of the note and entitled to enforce it. *See* § 55-3-104(a) (stating that a promissory note can be enforced by the holder of the instrument); § 55-1-201(b)(21)(A) (stating that the holder of the instrument is the person in possession of a negotiable instrument that is payable either to bearer (in blank) or to an identified person that is the person in possession); *see also Romero*, 2014-NMSC-007, ¶ 21 (stating that a person is entitled to enforce a note when they are the holder of the instrument); *id.* ¶ 26 ("[I]f the . . . note contained only a blank indorsement from [the original lender], that blank indorsement would have established the [b]ank as a holder because the [b]ank would have been in possession of bearer paper[.]").

**Plaintiff Properly Prosecuted the Case**

{13} Defendant nevertheless argues that Plaintiff is not the owner of the right to enforce the note because it is not the real party in interest. In particular, Defendant contends that, because Plaintiff was the trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2007-1 (the Certificateholders), but was succeeded by a subsequent trustee, the Wilmington Trust, Plaintiff is not the real party in interest with a right to enforce the note or mortgage. Defendant further contends that, "[w]ithout the indorsement by the prior holder [Plaintiff], Wilmington Trust cannot show that it has the right to enforce the [n]ote." Again, we disagree.

{14} Rule 1-017(A) NMRA states that "[e]very action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, *trustee of an express trust*, a party with whom or in whose name a contract has been made for the benefit of another or a party authorized by statute *may sue in that person's own name without joining the party for whose benefit the action is brought*[.]" (Emphasis added.) As such, it was appropriate for Plaintiff Citibank, N.A., as trustee for the Certificateholders, to bring the action on behalf of the Certificateholders, who are the real party in interest and for whose benefit the action was brought. *See id.* Nothing in Rule 1-017 states that, if a trustee is replaced by a successor trustee while the action is pending, the successor trustee must replace the original trustee as the named party in the action. Rather, the rule states that if the action is not prosecuted in the name of

8

the *real party in interest*, the court may allow ratification, joinder, or substitution. *See id.*

{15} Moreover, as pointed out by Plaintiff, to the extent the existence of a successor trustee could be seen as a transfer of interest from Citibank, N.A., as trustee, to Wilmington Trust, successor trustee, Rule 1-025(C) squarely addresses such transfers of interest in cases after an action has been commenced. *See Daniels Ins., Inc. v. Daon Corp.*, 1987-NMCA-110, ¶ 13, 106 N.M. 328, 742 P.2d 540 ("Although Rule 1-017(A) controls where an interest has been transferred prior to commencement of an action, [Rule] 1-025(C) becomes the applicable provision where a party commences the action but subsequently transfers its interests by assignment."). Rule 1-025(C) states:

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in Paragraph A of this rule.

Our review of the record reveals no motion made to the district court to direct Wilmington Trust to be substituted in the action or joined with the original party. *See id.* Further, even if there had been such a motion, the district court is not required to grant the motion. *See Daniels Ins., Inc.*, 1987-NMCA-110, ¶ 15 ("Substitution of a successor in interest under Rule 1-025(C) is within the sound discretion of the trial court."). Instead, as the rule expressly states, "the action may be continued by or against the original party[.]" Rule 1-025(C); *see also Crown Life Ins. Co. v. Candlewood, Ltd.*, 1991-NMSC-090, ¶ 14, 112 N.M. 633, 818 P.2d 411 ("The most

9

significant feature of Federal Rule 25(c) identical to our Rule 1-025(C) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named." (alterations, internal quotation marks, and citation omitted)). Therefore, we conclude that the district court did not err in not requiring the substitution of the Wilmington Trust, successor trustee for the Certificateholders, as plaintiff in the action.

{16}     Finally, we briefly respond to Defendant's contentions that nothing shows the transfer of the note from the initial trustee, Citibank, N.A., to the new trustee, Wilmington Trust, and that Citibank, N.A. did not indorse the note to Wilmington Trust. New Mexico's UCC has clearly stated that negotiation—meaning "a transfer of possession . . . of an instrument by a person other than the issuer to a person who thereby becomes its holder"—of an instrument "requires transfer of possession of the instrument and its indorsement by the holder. *If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.*" NMSA 1978, § 55-3-201 (1992) (emphasis added); *see also Romero*, 2014-NMSC-007, ¶ 26 ("[The] blank indorsement . . . established the [b]ank as a holder because the [b]ank [was] in possession of bearer paper[.]"). Thus, as the note is indorsed in blank, transfer of possession is all that was required for negotiation of the note in the present case.

**Transfer of Entire Instrument**

{17}     Defendant argues that less than the entire instrument was transferred to Plaintiff and, as such, Plaintiff may not enforce the note. Defendant's argument is premised on

10

the UCC's prohibition against splitting a cause of action on an instrument. "Our interpretation of a statute is a question of law that an appellate court reviews de novo." *State ex rel. Children, Youth & Families Dep't v. Maurice H.*, 2014-NMSC-034, ¶ 65, 335 P.3d 746.

{18} NMSA 1978, Section 55-3-203(d) (1992) states that, "[i]f a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this article and has only the rights of a partial assignee." *See also id.* cmt. 5 ("The cause of action on an instrument cannot be split."). Defendant contends that the note was not transferred to Plaintiff because there was no indorsement specifically to Plaintiff, and that the assignment of mortgage *does* assign the mortgage to Plaintiff but further directs payment to JPMorgan Chase Bank, NA (Chase). Defendant therefore concludes that, because Plaintiff "gets the [a]ssignment of [m]ortgage but does not get the payments, [Plaintiff] does not have all of the rights that [Megastar] had. In other words, the Entire Instrument was not transferred to [Plaintiff.]" We disagree with Defendant's interpretation of both the facts and the law.

{19} With regard to the facts, the note and mortgage were not transferred to separate parties. As discussed fully above, the note was transferred to Plaintiff by possession and an indorsement in blank. The mortgage was likewise transferred to Plaintiff by virtue of the assignment of mortgage, whereby MERS, as nominee for Megastar, expressly assigned the mortgage to Plaintiff and only Plaintiff. *See Flagstar Bank, FSB v. Licha*, 2015-NMCA-086, ¶ 17, 356 P.3d 1102 (stating that, where MERS' role

11

is that of nominee, MERS can assign the mortgage). Although the assignment of mortgage directed Defendant to contact Chase for payments, this does not change the fact that the mortgage and the rights thereof were assigned to Plaintiff. Chase is merely acting as servicer of the loan, and Defendant points to no law, and we are aware of no law, that prohibits a loan servicer from receiving payments on behalf of the holder of a note. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Thus, both the note and mortgage were transferred to Plaintiff.

{20} With regard to the law, Defendant's argument misunderstands what is meant by the prohibition in Section 55-3-203(d). As indicated above, Defendant's argument is premised on her belief that the note and mortgage may not be transferred to two separate transferees. As we have discussed, that is not what happened here—both the note and mortgage were transferred to the same transferee. Moreover, the prohibition in Section 55-3-203(d) is actually against a party attempting "to convey to any party less than the entire *amount* of the instrument[.]" Section 55-3-203(d) cmt. 5 (emphasis added)). As explained by the examples in the committee commentary:

> This is true of either "Pay A one-half," or "Pay A two-thirds and B one-third." Neither A nor B becomes a holder. On the other hand, an indorsement reading merely "Pay A and B" is effective, since it transfers the entire cause of action to A and B as tenants in common. An indorsement purporting to convey less than the entire instrument does, however, operate as a partial assignment of the cause of action. Subsection (d) makes no attempt to state the legal effect of such assignment, which is left to other law. A partial asignee [sic] of an

12

instrument has rights only to the extent the applicable law gives rights, either at law or in equity, to a partial assignee.

*Id.*

{21} Further, based on principles of statutory construction, the prohibition against transferring less than the entire instrument refers to an attempt to transfer less than the entire note. "[T]he plain language of a statute is the primary indicator of legislative intent[,]" and we "give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citations omitted). "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 16, 326 P.3d 1120 (internal quotation marks and citation omitted), *cert. quashed*, 2014-NMCERT-011, 339 P.3d 842. "In addition, we should read the entire statute as a whole so that each provision may be considered in relation to every other part." *Id.* (internal quotation marks and citation omitted). "We presume that the [L]egislature knew about the existing law and did not intend to enact a law inconsistent with any existing law." *Starko, Inc. v. N.M. Human Servs. Dep't*, 2014-NMSC-033, ¶ 51, 333 P.3d 947 (internal quotation marks and citation omitted).

{22} Under Chapter 55, Article 3, Part 1, General Provisions and Definitions of the UCC, Negotiable Instruments, "Instrument" is defined as "a negotiable instrument," Section 55-3-104(b), and "Negotiable Instrument" is defined in pertinent part as

13

an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money[.]

Section 55-3-104(a). In other words, the "instrument" which may not be split pursuant to Section 55-3-203(d) refers to the note—that promise of payment. *See id.*; *see also* § 55-3-104(e) (specifying that "[a]n instrument is a 'note' if it is a promise"). As there is no allegation in this case that the note itself was split, we conclude that Defendant's argument that the instrument was improperly split is unavailing.

**Policy Considerations**

{23}    Finally, Defendant presents a policy argument that is merely a restatement of her first two issues, with additional policy commentary. Policy considerations may apply when statutes or common law do not address an issue. *See Torrance Cty. Mental Health Program, Inc. v. N.M. Health & Env't Dep't*, 1992-NMSC-026, ¶¶ 24-25, 113 N.M. 593, 830 P.2d 145 (stating that the court applies policy considerations when the common law and the statute do not address an issue); *Transp. Indem. Co. v. Garcia*, 1976-NMCA-059, ¶ 7, 89 N.M. 342, 552 P.2d 473 (stating that it is the task of the courts to determine where equities lie when statutes provide no guidelines). However, as the UCC and case law in New Mexico have clearly established that Plaintiff is the holder of the note and has the right to enforce the note, we do not address Defendant's policy arguments.

14

**CONCLUSION**

{24}    For the foregoing reasons, we affirm the district court's grant of summary judgment and order denying Defendant's motion for reconsideration.

{25}    **IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**LINDA M. VANZI, Judge**