**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2016-NMCA-064

Filing Date:  April 26, 2016

Docket No. 33,394

PNC MORTGAGE, a division of PNC BANK
National Association, SUCCESSOR BY
MERGER TO NATIONAL CITY MORTGAGE,
a division of NATIONAL CITY BANK f/k/a
NATIONAL CITY BANK OF INDIANA,

       Plaintiff-Appellee,

v.

DANA ROMERO and EUGENE ROMERO,

       Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Brownstein Hyatt Farber Schreck, LLP
Eric R. Burris
Nury H. Yoo
Albuquerque, NM

for Appellee

Law Offices of Brian A. Thomas, P.C.
Brian A. Thomas
Albuquerque, NM

for Appellants

**OPINION**

**SUTIN, Judge.**

**{1}** Defendants-Appellants Dana and Eugene Romero (collectively, the Romeros) appeal from an award of summary judgment in favor of Plaintiff-Appellee PNC Mortgage, which

orders that the foreclosure action against the Romeros proceed. The Romeros argue on appeal that there are genuine issues of material fact regarding PNC Mortgage's standing to enforce the Romeros' promissory note and to foreclose the mortgage that secured the note. Because we agree that there are outstanding genuine issues of material fact regarding PNC Mortgage's right to enforce the note at the time it filed its complaint and because PNC Mortgage failed to show that it timely possessed the Romero note as a bearer instrument, we reverse the district court's ruling and remand for further proceedings.

## BACKGROUND

### The Note, the Mortgage, and the District Court Proceedings

{2}    In May 2006, the Romeros signed a promissory note (the Romero note) evidencing a debt in the principal sum of $240,000 to National City Mortgage,[1] a division of National City Bank of Indiana. The Romero note was secured by a mortgage on the Romeros' home (the Romero mortgage). The Romeros made the mortgage payments up to and including January 1, 2010, but thereafter they went into default.

{3}    In August 2010, Plaintiff PNC Mortgage, a division of PNC Bank, National Association, successor by merger to National City Mortgage (NCM), a division of National City Bank f/k/a National City Bank of Indiana (NCBI), filed a mortgage foreclosure complaint against the Romeros. PNC Mortgage attached to the complaint a copy of the unindorsed Romero note (hereinafter, the unindorsed note) that identified NCM, a division of NCBI, as the lender. PNC Mortgage also attached a copy of the Romero mortgage to the complaint. The complaint alleged that PNC Mortgage was "the holder of the [m]ortgage . . . pursuant to a name change/merger with current holder of record." Neither the complaint nor the attached documents alleged or showed any details of any successor status or merger. In September 2010, the Romeros filed an answer to the complaint wherein they alleged the affirmative defense of lack of standing to sue.

{4}    In November 2012, PNC Mortgage filed a motion for summary judgment contending that it was entitled to judgment because it was the holder of and entitled to enforce the note and mortgage as stated in an affidavit of Courtney M. Ely (the Ely affidavit). As "a duly authorized agent of . . . Plaintiff[,]" Ely stated that "PNC [Bank] is the legal holder" of the Romero note, "a true and correct copy of which is attached to the complaint" and the note was secured by the mortgage, "a true and correct copy of which is attached to the [c]omplaint[.]" In its motion, PNC Mortgage stated that its counsel was in possession of the

---

[1] As will be discussed in this Opinion, *infra* ¶¶ 3, 7, 8, there also existed an entity named "National City Mortgage Co."Although PNC Mortgage argues that there is a difference between National City Mortgage, a division, and National City Mortgage, a subsidiary, neither party explains the relevance, materiality, or consequences of the distinction.

original note and that it was the successor to the originator of the note and mortgage.

{5}     In response to the motion for summary judgment, the Romeros asserted that material issues of fact existed precluding summary judgment. The Romeros denied that PNC Mortgage was the holder of the note and attacked the Ely affidavit because it lacked a statement that it was based on personal knowledge, it stated conclusions, and it was inadmissible hearsay. In addition, the Romeros stated that the note that was attached to the complaint lacked indorsements and was "order paper," that there was no documentation of an assignment of the mortgage, and that nothing supported PNC Mortgage's claim to be the successor to the lender through merger, and therefore, PNC Mortgage lacked standing to foreclose. The Romeros also foreshadowed that PNC Mortgage may offer a "new and different" version of the note later in the proceedings and warned that allowing a second version would be unfair and create undue prejudice.

{6}     Attached to their response to PNC Mortgage's motion was an affidavit by Eugene Romero addressing the Romeros' attempts to modify their loan and regarding an inquiry into the owner of their promissory note. Attached to the affidavit was a letter the Romeros received from PNC Mortgage to their qualified written request to PNC Mortgage under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 to 2617 (2012). PNC Mortgage's letter dated September 27, 2012 (the QWR response letter), stated in relevant part that "[y]our loan is in a pool known as GSAA 2006-14 and the Trustee is Bank of America . . .; however, PNC Mortgage is the servicer of your loan and you should continue to contact us for any concerns regarding your mortgage." The QWR response letter also stated that "PNC Mortgage affirms the validity of the debt and requires repayment per the [n]ote and the [m]ortgage until all debt is paid in full. . . . PNC Mortgage will continue to service the above referenced loan, and any collection and foreclosure efforts will continue." In addition, Mr. Romero attached a letter dated May 17, 2012, from PNC Mortgage that stated "[w]e service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan under the Home Affordable Modification Program."

{7}     In response to the Romeros' contention that it lacked standing to enforce the note and to foreclose, PNC Mortgage submitted evidence in the form of certifications from the secretary of National City Bank/PNC Bank, National Association, and merger documentation from the Office of the Comptroller of the Currency. The documents showed that, "[e]ffective July 22, 2006, [NCBI] was acquired by [NCB] and National City Mortgage Co. became a wholly owned subsidiary of [NCB]." In 2008, "National City Mortgage Company merged into [NCB] and became a division of [NCB]." The certificate also noted that NCB, a wholly owned subsidiary of "National City Corporation," became a wholly owned subsidiary in 2008 of The PNC Financial Services Group, Inc., when National City Corporation merged with and into The PNC Financial Services Group, Inc. Effective in 2009, NCB was merged into PNC Bank, National Association, which was a wholly owned subsidiary of PNC Bancorp, Inc., a wholly owned subsidiary of The PNC Financial Services Group, Inc. The result of this complicated showing, none of which is contested by the Romeros, is that, through succession by merger, NCB was merged into PNC Bank in

3

November 2009.

**{8}** Also among PNC Mortgage's responsive summary judgment documents was a copy of the Romero note. But unlike the copy of the note that was attached to the complaint, this copy of the note contained two undated indorsements (hereinafter, the indorsed note). One indorsement unambiguously stated "Pay to the Order of National City Mortgage Co[.,] a Subsidiary of National City Bank of Indiana" and was signed by a document control specialist on behalf of "National City Mortgage[,] a division of National City Bank of Indiana[.]" The other indorsement, which appears below the foregoing indorsement, stated "Pay to the Order of [_____]" and was signed by the aforementioned document control specialist on behalf of "National City Mortgage Co[.,] a Subsidiary of National City Bank of Indiana." Neither indorsement was dated and neither PNC Mortgage nor the Romeros offered specific evidence regarding the timing of the indorsements.

**{9}** Based on its reading of the merger documentation it submitted to support summary judgment, PNC Mortgage argued that it established a prima facie case that it was in the same position as the original lender, NCM, and it was in possession of the original note and was the holder of the note. PNC Mortgage also argued that it was entitled to enforce the note, as well as the mortgage, because it is "well-settled that the mortgage 'follows' the note" as indicated in NMSA 1978, Section 55-9-203(g) (2005) of New Mexico's Uniform Commercial Code (UCC).

**{10}** The district court specifically determined that PNC Mortgage made a prima facie showing that it was the holder of the note and entitled to enforce it based on determinations that PNC Mortgage's predecessor in interest made the note a bearer instrument and that PNC Mortgage was in possession of the original note. *See* NMSA 1978, § 55-1-201(b)(21)(A) (2005) (stating that " 'holder' means . . . the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession"). Thus, the district court agreed that PNC Mortgage had established standing to foreclose and granted summary judgment in favor of PNC Mortgage.

**{11}** After the district court granted summary judgment, and after the Romeros filed their docketing statement with this Court, the Romeros moved for relief under Rule 1-060(B) NMRA. In their motion, the Romeros argued that our Supreme Court's decision in *Bank of New York v. Romero*, 2014-NMSC-007, 320 P.3d 1, which was decided after the district court granted summary judgment in favor of PNC Mortgage, held that in order to show standing, a plaintiff is required "to demonstrate . . . that it had standing to bring a foreclosure action at the time it filed suit." *Id.* ¶ 17. The Romeros also argued that under *Romero* and *Deutsche Bank National Trust Co. v. Beneficial New Mexico Inc.* (*Deutsche Bank I*), 2014-NMCA-090, 335 P.3d 217, *affirmed in part sub nom. Deutsche Bank National Trust Co. v. Johnston* (*Deutsche Bank II*), 2016-NMSC-013,___ P.3d ___, PNC Mortgage was required to show timely ownership of both the note and the mortgage. According to the Romeros, because PNC Mortgage had not shown that it held or possessed the original note at the time it filed the complaint and, therefore, lacked standing, summary judgment and the order of

4

foreclosure sale should have been deemed void under Rule 1-060(B)(4). The Romeros also argued that the Ely affidavit offered on behalf of PNC Mortgage during the summary judgment proceedings was inadmissible hearsay and inappropriately stated legal conclusions. Finally, the Romeros argued that the existence of the securitized trust, without specific evidence of PNC Mortgage's acquisition of the Romero note, created a genuine issue of material fact.

{12}    In response to the Romeros' motion, PNC Mortgage argued that it was different from the plaintiffs in *Romero* because PNC Mortgage was both the successor by merger to the original payee and, as shown by the Ely affidavit, the holder of the Romero note. PNC Mortgage asserted that *Romero* and its progeny were distinguishable because, unlike the *Romero* plaintiffs, PNC Mortgage had a right to enforce the note by virtue of its merger with NCBI. PNC Mortgage further argued that the Ely affidavit properly asserted Ms. Ely's opinions and did not constitute hearsay. PNC Mortgage also asserted that ownership of the note was irrelevant to standing.

**Arguments on Appeal**

{13}    On appeal, the Romeros contend that PNC Mortgage failed to prove it had standing and that, "at a minimum, a trial on the merits rather than summary judgment" is proper. The Romeros first argue that PNC Mortgage did not have standing to bring this foreclosure action because the unindorsed note attached to the complaint indicated that it was payable to NCM, a division of NCBI, and PNC Mortgage failed to provide any evidence confirming its right to enforce the Romero note as a successor in interest. The Romeros do not dispute that PNC Mortgage established that it is the corporate successor to NCM, but the Romeros dispute that this fact alone establishes a specific interest in the note or the mortgage required to establish standing. The Romeros specifically highlight the fact that PNC Mortgage failed to produce any documentation that accounted for each time the note and mortgage changed hands, including during each bank merger.

{14}    The Romeros also argue that the two different copies of the Romero note indicate that PNC Mortgage lacked standing when it filed the foreclosure complaint because the note that came to light during the summary judgment proceedings, the indorsed note, does not indicate that the added indorsements were executed prior to the filing of the complaint or that PNC Mortgage had possession of the indorsed note and was the holder at the time it filed its complaint. Thus, according to the Romeros, providing the indorsed note during the course of litigation was inadequate to show possession of the indorsed note at the time the foreclosure suit was filed.

{15}    In addition, the Romeros point out that, after the filing of the complaint, PNC Mortgage's QWR response letter stated the loan was owned by a securitized trust entitled

GSAA 2006-14 and that PNC Mortgage was merely the servicer of the note.[2] The Romeros mention that the effective date of a trust usually appears in the name of the trust, in this case 2006, and that the trust here "would most likely have accepted assets . . . (usually [thirty to ninety] days) after the effective date of the trust." Inferring that the trust would have closed by early 2007 and that the merger did not close until after 2007, the Romeros conclude that PNC Mortgage could not have been successor to the original lender by merger. From these circumstances, the Romeros argue that "[t]he strong inference here is that the [n]ote and the [m]ortgage were transferred to the GSAA 2006-14 trust during the 2006 window, and then either the [n]ote or the [m]ortgage (or both) was transferred back to [PNC Mortgage], in its role as servicer for the GSAA 2006-14 trust at some point thereafter." Thus, according to the Romeros, "[PNC Mortgage] has been unable to make a convincing, logical case as to when and if the rights under the [n]ote were negotiated (in UCC parlance) and the rights under the [m]ortgage were transferred to the GSAA 2006-14 trust as principal (with servicing rights retained by [PNC Mortgage])," thereby resulting in a failure of PNC Mortgage's claim of standing. Therefore, according to the Romeros, material issues of fact exist as to whether PNC Mortgage owned, or was the holder or in possession of, either the note or mortgage, when PNC Mortgage filed the foreclosure complaint.

**{16}** In addition to the deficiencies regarding the note, the Romeros argue that PNC Mortgage failed to show ownership of the Romero mortgage by virtue of an assignment of mortgage, and thus, PNC Mortgage failed to prove standing.

**DISCUSSION**

**Standard of Review**

**{17}** "The [summary judgment] movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits. On review, [the appellate courts] consider the whole record for evidence that puts a material fact at issue. If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241 (citations omitted). "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971. The appellate courts review the facts "in the light most favorable to the party opposing summary judgment, drawing all inferences in favor of that party." *Gormley v.*

---

[2]A loan servicer is generally "responsible for processing payments and supervising any resulting foreclosure or workout." Richard H. Martin, *Proving Standing to Foreclose a Florida Mortgage*, 85 Fla. B.J. 31 (Dec. 2011). However, neither party provided a pooling and servicing agreement or any other documentary evidence that might describe the rights and obligations of PNC Mortgage versus the rights and obligations of the securitized trust.

*Coca-Cola Enters.*, 2005-NMSC-003, ¶ 8, 137 N.M. 192, 109 P.3d 280 (internal quotation marks and citation omitted).

**Standing**

**{18}**     At the time that this case was briefed and argued before this Court, standing in foreclosure cases had been articulated as a jurisdictional prerequisite that "may not be waived and may be raised at any stage of the proceedings, even sua sponte by the appellate court." *Romero*, 2014-NMSC-007, ¶ 15 (internal quotation marks and citation omitted); *Flagstar Bank, FSB v. Licha*, 2015-NMCA-086, ¶ 13, 356 P.3d 1102. However, our Supreme Court recently issued its opinion in *Deutsche Bank II*, 2016-NMSC-013, ¶ 9, wherein the Court took the opportunity "to clarify that standing is not a jurisdictional prerequisite in mortgage foreclosure cases in New Mexico[.]" According to our Supreme Court, only prudential rules of standing apply in such cases. *Id.* ¶¶ 10, 12. The Court recognized that under the prudential rules, a litigant is generally required to demonstrate "injury in fact, causation, and redressability to invoke the [district] court's authority to decide the merits of a case." *Id.* ¶ 13 (internal quotation marks and citation omitted). To effectively show a direct and concrete injury, the Court stated that a party seeking to enforce a promissory note must establish that it has the right to enforce the note under the UCC. *Id.* ¶ 14; *see also* NMSA 1978, § 55-3-301 (1992). Finally, the Court stated that "[a]rguments based on a lack of prudential standing are analogous to asserting that a litigant has failed to state a legal cause of action[,]" and "issues of prudential standing [cannot be waived] prior to the completion of a trial on the merits." *Deutsche Bank II*, 2016-NMSC-013, ¶ 16; *see also* Rule 1-012(H)(2) NMRA ("A defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered . . . or by motion for judgment on the pleadings, or at the trial on the merits.").

**{19}**     After changing the test from a jurisdictional one to a prudential one, the Court in *Deutsche Bank II* firmly stood with *Romero*'s determination that a party seeking to foreclose is "required to demonstrate under [the UCC] that it had standing to bring a foreclosure action at the time it filed suit." *Romero*, 2014-NMSC-007, ¶ 17; *see Deutsche Bank II*, 2016-NMSC-013, ¶¶ 20-23. Thus, to demonstrate standing on a prudential basis, the foreclosing party "must demonstrate that [it] had the right to enforce the note and the right to foreclose the mortgage at the time the foreclosure suit was filed." *Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2016-NMCA-010, ¶ 15, 365 P.3d 8, *cert. granted*, 2016-NMCERT-001, 365 P.3d 8; *Deutsche Bank I*, 2014-NMCA-090, ¶ 8.[3] It remains clear that a party seeking

---

[3]*Romero* states that a party seeking to foreclose must establish "timely ownership" of the note and mortgage, 2014-NMSC-007, ¶ 17, however, reading the *Romero* opinion as a whole, we believe the Supreme Court's mention of ownership was not intended to legally distinguish that concept from status as a holder of a negotiable instrument under the UCC. The proper inquiry is therefore whether said party is the holder, not the owner. *See* § 55-3-301 ("A person may be a person entitled to enforce the instrument even though the person

to prove standing must show that it had the right to enforce the note at the time it filed its complaint. *Deutsche Bank II*, 2016-NMSC-013, ¶¶ 20-27. Because we reverse on the issue of the right to enforce the note, we need not address the Romeros' argument regarding the right to foreclose the mortgage.

**PNC Mortgage's Right to Enforce the Note**

**{20}** According to New Mexico law, a promissory note is a negotiable instrument, NMSA 1978, § 55-3-104(a), (b), (e) (1992), that can be enforced by "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [certain provisions of the UCC]." Section 55-3-301; *Phoenix Funding*, 2016-NMCA-010, ¶ 16. The holder of the note is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" Section 55-1-201(b)(21)(A). The bearer is "a person in possession of a negotiable instrument . . . that is payable to bearer or indorsed in blank[.]" Section 55-1-201(b)(5).

**{21}** We turn to PNC Mortgage's argument that either the indorsed note provided during summary judgment proceedings or the unindorsed note attached to the complaint provided standing.

**A.     The Indorsed Note**

**{22}** PNC Mortgage argues that the indorsed note provides a basis for standing because PNC Mortgage was in possession of a bearer instrument and thus had the right to enforce the note. This argument was accepted by the district court and served as the basis for granting summary judgment to PNC Mortgage. According to the district court, PNC Mortgage's predecessor in interest made the note a bearer instrument by indorsing it in blank, and PNC Mortgage was in possession of that original note. The district court therefore held that PNC Mortgage thereby established a prima facie case of its right to enforce the note and had established standing.

---

is not the owner of the instrument[.]"); NMSA 1978, § 55-3-110(c)(2) cmt. 3 (1992) ("This provision merely determines who can deal with an instrument as a holder. It does not determine ownership of the instrument or its proceeds."); *Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes*, at 8 (Am. Law Inst. & Unif. Law Comm'n Nov. 14, 2011) ("The rules that determine whether a person is entitled to enforce a note do not require that person to be the owner of the note, and a change in ownership of a note does not necessarily bring about a concomitant change in the identity of the person entitled to enforce the note. . . . The rules concerning transfer of ownership and other interests in a note . . . primarily relate to who, among competing claimants, is entitled to the economic value of the note." (footnote omitted)).

**{23}** "A blank indorsement . . . does not identify a person to whom the instrument is payable but instead makes it payable to anyone who holds it as bearer paper." *Romero*, 2014-NMSC-007, ¶ 24. In general, a person or entity in possession of a bearer instrument is considered a holder, and a holder of a bearer instrument is entitled to enforce its terms. Section 55-1-201(b)(21)(A) (defining "holder" under the UCC); § 55-3-301 (" 'Person entitled to enforce' an instrument means (i) the holder of the instrument [or] (ii) a nonholder in possession of the instrument who has the rights of a holder . . . . A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument[.]").

**{24}** Here, the indorsed note contained two indorsements—a special indorsement and an indorsement in blank. Although neither indorsement is dated, the parties appear to agree that had PNC Mortgage been able to prove timely possession of the indorsed note, it would defeat the Romeros' standing claim. However, the Romeros argue that production of the document is insufficient to prove PNC Mortgage's right to enforce at the time the complaint was filed, as required by *Romero.* We agree.

**{25}** PNC Mortgage failed to establish that it had a right to enforce the indorsed note. The note came to light years after PNC Mortgage filed its complaint. There exists no evidence that at the time it filed its complaint, PNC Mortgage possessed the original of the indorsed note. Moreover, there exists no evidence as to the date of the indorsements on the indorsed note. As indicated in *Phoenix Funding,* "where an indorsed note is not produced until after the plaintiff has filed for foreclosure and the indorsement is undated, the indorsement is insufficient to show that the plaintiff was the holder of that note at the time the foreclosure complaint was filed." 2016-NMCA-010, ¶ 20; *see also Deutsche Bank II*, 2016-NMSC-013, ¶¶ 24-25 (holding that although an undated indorsement does not impact the validity of the note, presenting an undated indorsed note after the complaint is filed does not prove that a party seeking to foreclose possessed the blank note when it filed suit).

**{26}** Although we hold that PNC Mortgage failed to prove its prima facie case based on the indorsed note, we believe that it is important to mention that *Romero* did not exist at the time the district court issued its order granting summary judgment and thus the timeliness requirement enumerated in *Romero* was not before the district court in this case. The test for establishing standing in foreclosure actions evolved dramatically during the pendency of this appeal. Our Supreme Court issued *Romero* two months after the filing of the docketing statement in this case. *Romero* definitively stated that a party seeking to foreclose must, as a matter of standing, establish its right to foreclose at the time the complaint is filed. This was not a clearly articulated standard at the time the district court ruled on PNC Mortgage's motion for summary judgment. The Romeros alerted the district court to *Romero* in a motion for post-judgment relief. However, the motion was filed after the case had been appealed to this Court and after the parties had notified this Court of *Romero* in memoranda in the calendaring process. The record on appeal does not contain the district court's order on the motion for post-judgment relief and neither party made a transcript or disc of the hearing available to this Court on appeal. Due to the fact that the appeal continued, we assume that

the motion was denied. On appeal, PNC Mortgage does not argue that *Romero* is not applicable. Therefore, in view of *Romero*, the district court's analysis was deficient.

## B.     The Unindorsed Note

**{27}**     PNC Mortgage also argues that it has standing to enforce the Romero note because the unindorsed note, a copy of which was attached to the complaint, was payable to PNC Mortgage's predecessor in interest. PNC Mortgage argues that it is thus entitled to enforce the note because, as a successor in interest and a holder of the note, it had all of the rights of its predecessor in interest.

**{28}**     As indicated earlier, a holder of a note and a nonholder in possession of a note with the rights of a holder have the right to enforce the note. *See* § 55-3-301. Our Supreme Court clarified in *Romero*, however, that in order to enforce a note made payable to a third party, a successor must prove that it has both physical possession of the note as well as the right to enforce it through a proper indorsement or transfer via negotiation. 2014-NMSC-007, ¶ 21 (holding that "a third party must prove both physical possession *and* the right to enforcement through either a proper indorsement or a transfer by negotiation" and referencing the definition of "negotiation" contained in Section 55-3-201(a)). Mere possession of a note payable to a third party is therefore insufficient. *See Romero*, 2014-NMSC-007, ¶ 23 ("Possession of an unindorsed note made payable to a third party does not establish the right of enforcement, just as finding a lost check made payable to a particular party does not allow the finder to cash it."); *see also Deutsche Bank II*, 2016-NMSC-013, ¶ 32 (same). *Romero* therefore requires that a successor in interest seeking to establish its right to foreclose provide some evidence of a proper indorsement or transfer via negotiation as part of its prima facie case. According to our Supreme Court, "the minor up-front compliance costs that foreclosure plaintiffs will incur by confirming that they have the proper documentation *before* filing suit are a small price to pay for protecting the rights of New Mexico homeowners and the integrity of the State's title system by requiring strict and timely compliance with long-standing property law requirements." *Deutsche Bank II*, 2016-NMSC-013, ¶ 22.

**{29}**     In support of its claim that it was a holder of the unindorsed note, PNC Mortgage offered the Ely affidavit stating that "PNC is the legal holder of a Promissory Note ('Note') dated May 02, 2006, and executed by Dana Romero and Eugene Romero, in the original principal sum of $240,000.00[.]" The Romeros argue that the Ely affidavit failed to accomplish its apparent purpose to establish as an undisputed fact that PNC Mortgage had standing.

**{30}**     We give little weight to the Romeros' appellate attack because the Romeros do not point out where in the district court proceedings they sought to strike the Ely affidavit. *See Chavez v. Ronquillo*, 1980-NMCA-069, ¶¶ 19-20, 94 N.M. 442, 612 P.2d 234 ("A party must move to strike an affidavit that violates Rule [1-056(E) NMRA]."). However, we do note that the statement that PNC Mortgage is the "holder" of the note is undoubtedly a legal

conclusion. An affidavit submitted in support of a motion for summary judgment "shall set forth such facts as would be admissible in evidence[.]" Rule 1-056(E). Testimony by a lay witness "that seeks to state a legal conclusion is inadmissible." *State v. Clifford*, 1994-NMSC-048, ¶ 20, 117 N.M. 508, 873 P.2d 254; *State v. Elliott*, 2001-NMCA-108, ¶ 22, 131 N.M. 390, 37 P.3d 107. We also note that the Ely affidavit is of questionable value given the lack of evidence in support of the statement that PNC Mortgage was and is a "holder." We hold that the affidavit has no impact as to this Court's decision regarding standing.

**{31}** PNC Mortgage also argues that because it is a successor in interest, as a matter of law, it had NCBI's right to enforce the unindorsed note. PNC Mortgage bases its argument on the listing of the mergers set out in certifications from the secretary of National City Bank and PNC Bank and in merger documentation from the Office of the Comptroller of the Currency presented to the district court. PNC Mortgage also relies on a provision in the National Bank Act that provides:

> All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests[.]

12 U.S.C. § 215a(e) (2012).

**{32}** The Romeros argue that, while the National Bank Act offers "a *plausible* scenario" showing how the note "could be enforceable under applicable statutes and case law[,]" that "scenario . . . must yield when the *actual* facts contradict that story." The Romeros point to the "timeline of events" relating to the note, the QWR response letter, the existence of the securitized trust, the mergers, the foreclosure complaint, and the later-indorsed note appearing in summary judgment proceedings, all showing that PNC Mortgage was likely not the holder of the unindorsed note when it filed its complaint. The Romeros also argue that while the merger history may have shown PNC Mortgage as successor to the corporate entity originating the loan, "it does not show how or whether that succession included any interest in the subject [n]ote or [m]ortgage." And the Romeros argue that a reasonable inference can be drawn that the note and mortgage were transferred to the trust before the merger.

**{33}** The Romeros contend that, altogether, genuine issues of material facts exist as to whether PNC Mortgage possessed and was holder of the unindorsed note at the time the complaint was filed. The Romeros emphasize that because the securitized trust includes "2006" in its name, because the effective date of the trust is usually in the name of the trust, and because trusts typically close thirty to ninety days after the effective date, it is likely that the trust accepted the Romero note in 2006 or early 2007. Because PNC Mortgage did not merge with the Romeros' lender until 2008, the Romeros argue that there is a strong

inference that PNC Mortgage was not the successor to the original lender. According to the Romeros, in failing to document the critical chain of events of transfer of the note to PNC Mortgage or to the trust, PNC Mortgage left a "muddled story of chain of title," which created sufficient doubt and confusion with irregularities and material facts in dispute to preclude summary judgment in PNC Mortgage's favor.

**{34}** We agree that the lack of information regarding the transfer of the unindorsed note creates genuine issues of material fact as to whether PNC Mortgage was the holder of the unindorsed note at the time of filing of the complaint. There is nothing in the record to show that PNC Mortgage offered evidence to confirm that the Romero note was included in the merger. In fact, there is a noticeable lack of documents actually showing that PNC Mortgage received the unindorsed note and had it in hand at the time PNC Mortgage filed the complaint. Before the indorsed note appeared, the records contained only a copy of the unindorsed note attached to the complaint and a copy of letters from PNC Mortgage stating that the loan was owned by a securitized trust. With the limited available information, it is possible that the unindorsed note came to PNC with the merger documentation. However, it is also possible that the securitized trust was the holder of (or otherwise in possession of) the unindorsed note at the time the complaint was filed. Although we do not believe that the QWR response letter, which states that the securitized trust "owned" the loan, wholly negates PNC Mortgage's claim of timely possession, it does raise genuine issues of material fact regarding what rights and responsibilities were retained by PNC Mortgage or its predecessor in interest during the sale or transfer of the loan and whether the timing of any sale or transfer interfered with PNC Mortgage's interest.

**{35}** We note that the existence of a securitized trust does not automatically prohibit a party other than the trust from having a right to enforce a note. It is important to differentiate between the owner of a securitized loan, which is the investor having the right to the economic benefits of the note such as the proceeds from foreclosure, and the entity with the right to enforce the note against the borrower. *See supra*, n.3. PNC Mortgage may have been able to establish a right to enforce the unindorsed note had it shown documentation confirming what entity had possession of it through negotiation or transfer at the time of filing the complaint.

**CONCLUSION**

**{36}** PNC Mortgage failed to prove standing as to the indorsed note. Genuine issues of material fact exist regarding PNC Mortgage's right to enforce the unindorsed note at the time it filed the complaint. For the reasons set forth in this Opinion, we reverse the district court's order granting summary judgment and remand the case for further proceedings.

**{37}** **IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

12

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**

_____

**RODERICK T. KENNEDY, Judge**