This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38642

WILMINGTON SAVINGS FUND SOCIETY,
FSB d/b/a CHRISTIANA TRUST, as Trustee
for HLSS MORTGAGE MASTER TRUST
FOR THE BENEFIT OF THE HOLDERS
OF THE SERIES 2014-1 CERTIFICATES
ISSUED BY HLSS MORTGAGE MASTER
TRUST,

      Plaintiff-Appellee,

v.

MICHAEL P. ROMERO,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Jeff F. McElroy, District Court Judge

Rose L. Brand & Associates, P.C.
Eraina M. Edwards
Albuquerque, NM

for Appellee

New Mexico Legal Center, P.C.
Lee Boothby
Taos, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** Defendant Michael Romero appeals the district court's order granting summary judgment in favor of Plaintiff Wilmington Savings Fund Society d/b/a Christiana Trust as Trustee for HLSS Mortgage Master Trust (Wilmington). Because we agree with Romero that a genuine issue of material fact exists regarding Wilmington's standing to bring this foreclosure action, we reverse and remand.

## DISCUSSION

**{2}** A party bringing a foreclosure action must demonstrate that, at the time of filing their complaint, they "had the right to enforce the note and the right to foreclose the mortgage." *PNC Mortg. v. Romero*, 2016-NMCA-064, ¶ 19, 377 P.3d 461 (internal quotation marks and citation omitted). "With respect to the promissory note, the foreclosing party must demonstrate that, at the time it filed suit, it either (1) had physical possession of the note indorsed to it or indorsed in blank or (2) received the note with the right to enforcement, as required by the UCC." *HSBC Bank USA, Nat'l Ass'n v. Wiles*, 2020-NMCA-035, ¶ 9, 468 P.3d 922 (omission, internal quotation marks, and citation omitted).

**{3}** In this case, Wilmington filed a motion for summary judgment seeking foreclosure and rejection of Romero's affirmative defenses.[1] Romero filed a cross-motion for summary judgment in which he argued that Wilmington lacked standing. The district court granted Wilmington's motion for summary judgment on all matters but standing and denied Romero's cross-motion for summary judgment.[2] The district court reasoned that multiple mortgage assignments, versions of the note, and undated indorsements in the record created a genuine issue of material fact as to whether Wilmington or, rather, another entity—Ocwen Loan Servicing, LLC (Ocwen)—held the note on the date Wilmington filed its complaint. Wilmington moved the district court to reconsider the issue of standing, arguing that as Wilmington's loan servicer, Ocwen was its agent, and any distinction between the two entities was immaterial for the purposes of standing. Romero responded by arguing in part that the record did not establish an agency relationship between Ocwen and Wilmington. The district court accepted Wilmington's agency theory, reconsidered its earlier ruling, and granted Wilmington's motion for summary judgment in full.

---

[1]Romero's affirmative defenses initially took the form of counterclaims. On Wilmington's motion, the counterclaims were dismissed as time-barred; the district court nevertheless permitted Romero to assert those claims as defenses and to seek recoupment. Romero contends the district court improperly converted his counterclaims to affirmative defenses. Romero, however, ignores the reason for the conversion—that his counterclaims were time-barred—and fails entirely to challenge that ruling. We thus do not address Romero's contention. *See State v. Dietrich*, 2009-NMCA-031, ¶ 45, 145 N.M. 733, 204 P.3d 748 (stating that we will not consider an issue where the appellant "provides no basis for us to determine that the district court erred"), *overruled on other grounds by State v. Marquez*, 2021-NMCA-046, ¶ 21 n.5, 495 P.3d 1150.

[2]Romero contends the district court "took no action with respect to [his] affirmative defenses." That is incorrect. Wilmington addressed Romero's affirmative defenses in its motion for summary judgment, but Romero failed to respond to its arguments; the district court then entered judgment on all the issues except standing.

**{4}** We review the district court's grant of summary judgment de novo. *PNC Mortg.*, 2016-NMCA-064, ¶ 17. Summary judgment is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. In deciding whether summary judgment is proper, we "consider the whole record for evidence that puts a material fact at issue" and view the facts "in the light most favorable" to the non-moving party, "drawing all inferences" in their favor. *PNC Mortg.*, 2016-NMCA-064, ¶ 17 (internal quotation marks and citations omitted). As the party moving for summary judgment, Wilmington had the "initial burden of establishing a prima facie case" by producing "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citations omitted); *see also Brown v. Taylor*, 1995-NMSC-050, ¶ 8, 120 N.M. 302, 901 P.2d 720 ("The burden is on the moving party to show an absence of a genuine issue of fact, and that it was entitled as a matter of law to judgment in its favor.").

**{5}** Thus, to make out a prima facie case under its agency theory, Wilmington had to establish that Ocwen was authorized to act as its agent and was acting under its control at the time the complaint was filed. *See Hansler v. Bass*, 1987-NMCA-106, ¶ 28, 106 N.M. 382, 743 P.2d 1031 (providing that the party asserting an agency relationship must come forward with evidence that the purported agent was authorized to act on behalf of the principal, and defining an agent as "one authorized by another to act on his behalf and under his control"). Additionally, as Romero argues, Wilmington had to demonstrate not only that Ocwen possessed the note when the complaint was filed, but also that such possession fell within the scope of Ocwen's agency relationship with Wilmington. *See* Restatement (Third) of Agency § 1.01 cmt. c (2006) (providing that the existence of an agency relationship does not necessarily mean an agent has authority to act on behalf of its principal in all matters because "[t]he fact that an agent acts on behalf of, or represents, another person implies the existence of limits on the scope of the agency relationship").

**{6}** On appeal, Romero primarily argues that the district court's grant of summary judgment was improper because the record lacks evidence of the existence and scope of an agency relationship between Ocwen and Wilmington. Wilmington counters that it was undisputed that Ocwen was acting as Wilmington's loan servicer and that a servicer is by definition an agent that may hold a note on the principal's behalf without affecting the principal's ability to enforce the note.[3] *See* NMSA 1978, § 58-21-2(N)

---

3Wilmington does not challenge the district court's original determination that there were genuine issues of fact as to whether Wilmington or Ocwen possessed the note at the time the complaint was filed. Indeed, Wilmington concedes that "the district court properly identified this issue as the single legal issue precluding summary judgment . . . ." (Emphasis omitted.) We thus do not consider the propriety of the district court's original ruling on Wilmington's motion for summary judgment. *See Dietrich*, 2009-NMCA-031, ¶ 45. Wilmington, in support of its agency argument on appeal, does assert in passing that "[t]he undisputed facts show that [Wilmington] possessed the [n]ote on the day the complaint was filed." This assertion is plainly at odds with the district court's original summary judgment ruling, unchallenged by Wilmington, and is otherwise undeveloped. We thus do not consider it. *See Titus v. City of Albuquerque*,

(2009) (defining a "servicer" as "a person who collects or receives payments . . . on behalf of a note holder or investor in accordance with the terms of a residential mortgage loan"). We do not necessarily agree with Wilmington's contention, however, since "[n]ot all relationships in which one person provides services to another satisfy the definition of agency." Restatement (Third) of Agency § 1.01 cmt. c. Regardless, even assuming arguendo that an entity's status as a "loan servicer" is equivalent to that of an agent authorized to possess a note on the principal's behalf, Wilmington still failed to make out a prima facie case under its agency theory, due to the lack of evidence that Ocwen was acting as Wilmington's loan servicer at the time the complaint was filed. *See Sanders v. Est. of Sanders*, 1996-NMCA-102, ¶ 1, 122 N.M. 468, 927 P.2d 23 (assuming without deciding a legal issue because it is not outcome-determinative).

{7}     In support of its agency theory, Wilmington contends that "it was not necessary for [it] to come forward with evidence of the scope of its agency relationship with Ocwen" because either Romero admitted Ocwen was Wilmington's loan servicer or the record indisputably establishes that fact. Concerning its first contention, Wilmington cites arguments Romero made in his briefing on the cross-motions for summary judgment. We think Wilmington reads too much into these arguments, the first being Romero's contention that "[a]t the time of the filing of the [c]omplaint, the actual [n]ote was indorsed to Ocwen, who was servicing the loan." When Romero made this contention, he was speculating about why the endorsements on the note had changed from the time the complaint was filed to the time of the summary judgment briefing. Moreover, even if the contention were viewed as an admission, it would prove little— Romero did not admit that Ocwen was acting as *Wilmington's* loan servicer at the time of the complaint. Wilmington next cites Romero's contention that the asset purchase agreement relied on by Wilmington meant only that "Ocwen purchased the servicing rights and the right to the servicing compensation," not that Ocwen purchased the note or the mortgage. Romero made this contention when arguing that the mortgage assignment to Wilmington was invalid. Here too, even if this contention were deemed an admission, it would prove little—at no time did Romero admit that Ocwen was serving as *Wilmington's* loan servicer at the time of the complaint. In short, even if we assume that proof of Ocwen's status as a loan servicer could prove Ocwen's status as Wilmington's agent, Romero never admitted there was a loan servicing relationship between Wilmington and Ocwen at the time the complaint was filed, such that Wilmington was relieved of demonstrating this point for purposes of summary judgment. *See Romero*, 2010-NMSC-035, ¶ 10.

{8}     Wilmington's alternative contention that the record "indisputably" demonstrates the existence of an agency relationship between it and Ocwen, likewise, is not borne out. On this point, Wilmington cites two affidavits and a "Certificate of Possession of Original Note" that refer to Ocwen as Wilmington's loan servicer. Yet this evidence demonstrates only that Ocwen was acting as Wilmington's loan servicer on the date the affidavits and certificate were sworn—in other words, *after* Wilmington filed its complaint. Our review of the record has uncovered no other evidence that Ocwen was

2011-NMCA-038, ¶ 30, 149 N.M. 556, 252 P.3d 780 ("This Court has no duty to review an argument that is not adequately developed.").

serving as loan servicer for, or was otherwise in an agency relationship with, Wilmington at the time the complaint was filed. Without such evidence, Wilmington did not make a prima facie case of standing on its agency theory and therefore was not entitled to summary judgment. *See Oakey, Est. of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 42, 399 P.3d 939 (concluding that the defendant's "failure to establish a prima facie case, standing alone, mandates reversal of the district court's entry of summary judgment").

**CONCLUSION**

**{9}** For the foregoing reasons, we conclude that the district court erred by granting summary judgment on the issue of standing under the agency theory presented in Wilmington's motion for reconsideration.[4] As Wilmington advanced no other ground for affirmance on the issue of standing, we reverse and remand for further proceedings consistent with this opinion.

**{10} IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**

---

[4]Because we reverse on this ground, we need not address Romero's other claims of error, including his argument that Wilmington had no right to foreclose the mortgage. *See PNC Mortg.*, 2016-NMCA-064, ¶ 19 (declining to address the issue of the bank's right to foreclose after reversing on the issue of its right to enforce the note); *see also State v. Hanson*, 2015-NMCA-057, ¶ 1, 348 P.3d 1070 (providing that when we reverse on one ground, we need not reach alternative grounds for reversal). Still, we briefly address Romero's contention that Wilmington's motion for reconsideration should not have been granted because, in his words, "there is no basis for seeking reconsideration of a non-final order." This contention is without merit. It is black letter law that a "district court has the inherent authority to reconsider its interlocutory orders," such as the denial of summary judgment. *Tabet Lumber Co. v. Romero*, 1994-NMSC-033, ¶ 6, 117 N.M. 429, 872 P.2d 847 (internal quotation marks and citation omitted); *see also Thompson v. Potter*, 2012-NMCA-014, ¶ 5, 268 P.3d 57 ("The denial of a summary judgment motion is an interlocutory order and may be reconsidered by the district court at any time before final judgment.").