# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:**_____

**Filing Date:  January 26, 2017**

**NO. S-1-SC-35512**

**PHOENIX FUNDING, LLC,**

  Plaintiff-Respondent,

v.

**AURORA LOAN SERVICES, LLC and
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.,**

  Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI
Francis J. Matthew, District Judge**


Murr Siler & Accomazzo, P.C.
Joshua A. Spencer
Albuquerque, NM


Jamie G. Siler
James P. Eckels
Denver, CO

for Petitioners

William F. Davis & Associates, P.C.
Nephi Hardman

Albuquerque, NM

for Respondent

**OPINION**

**NAKAMURA, Justice.**

{1}     We are called to decide whether a 2009 default foreclosure judgment may be collaterally attacked based on assertions that the judgment was void for lack of jurisdiction and procured by fraud.  In this case, those assertions were made by Phoenix Funding, LLC, which attempted to overturn a settled foreclosure judgment entered in favor of Aurora Loan Services, LLC.  We hold that the 2009 default judgment was not void and that Phoenix's fraud claim is procedurally barred.  Accordingly, we reverse the judgment of the Court of Appeals, reinstate the district court's grant of summary judgment to Aurora, and remand to the district court with instructions to dismiss Phoenix's fraud claim.

**I.     BACKGROUND**

{2}     On December 13, 2006, Kirsten Hood executed a promissory note payable to GreenPoint Mortgage Funding, Inc., for the purchase of a home in Santa Fe, New Mexico (the Property).  This note was secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc., (MERS), as nominee for GreenPoint.

{3}     By way of the following transactions, the Hood note was eventually transferred from GreenPoint to Aurora.  First, after origination, the note was pooled into a securitized trust—namely, GreenPoint Mortgage Funding Trust Mortgage Pass-

Through Certificates, Series 2007-ARI. An agreement that created this securitized trust indicated that the Hood note was held by Lehman Brothers Holdings Inc., which transferred it to Structured Asset Securities Corporation, who then transferred the note to U.S. Bank National Association. In January 2009, the note was transferred to Aurora.

{4}     On March 3, 2009, Aurora filed a foreclosure complaint in district court, alleging that Hood had defaulted on the note. Aurora alleged that it was, by assignment, the current holder of the note and mortgage. Aurora attached to its complaint an unindorsed copy of both the Hood note and a document entitled "Corporate Assignment of Mortgage" indicating that MERS had assigned to Aurora the mortgage "together with the Note . . . ."

{5}     Because Hood did not respond to Aurora's complaint, the district court entered default judgment on October 8, 2009, finding that the note and mortgage had been properly assigned to Aurora. The district court also found that Hood had defaulted on the note, ordered the mortgage foreclosed, and appointed a special master to conduct a foreclosure sale. Hood neither redeemed the Property nor appealed the district court's order.

{6}     Aurora purchased the Property at the foreclosure sale and recorded a Special

Master's Deed. On August 23, 2010, the district court entered an order that confirmed the sale of the Property to Aurora and approved the Special Master's Deed.

{7} Enter Gregory Hutchins, a speculator in foreclosed properties. Seeking to procure the Property, on November 3, 2011—fourteen months after the district court approved the Special Master's Deed—Hutchins obtained a quitclaim deed to the Property from Hood for "valuable consideration." Hood executed the quitclaim deed on November 3, 2011, despite the 2009 default judgment against her. The deed was recorded on the same day.

{8} Hutchins then attempted to transfer the Property to Phoenix, a New Mexico limited liability company of which Hutchins was the sole member. Hutchins first executed a note, promising to pay $750,000.00 to Phoenix. As security for the note, he executed a mortgage in favor of Phoenix, encumbering his supposed interest in the Property.

{9} On March 1, 2012, Phoenix filed a complaint against Hutchins, GreenPoint, Aurora, and MERS. Against Hutchins, Phoenix asserted actions for judgment on the note, foreclosure on the Property, and quiet title. This Court recognizes that, by directing Phoenix to assert these claims in this case, Hutchins effectively *sued himself* in his attempt to take control of the Property.

3

{10}     Against GreenPoint, Aurora, and MERS, Phoenix asserted claims for declaratory judgment and quiet title. Phoenix argued that because Aurora did not attach a copy of an indorsed note to its 2009 foreclosure complaint against Hood, Aurora lacked standing to commence suit. Phoenix alleged that the district court was consequently without jurisdiction and, thus, the 2009 default judgment against Hood and the resulting foreclosure sale were void. Phoenix sought an order quieting title to itself in fee simple.

{11}     Aurora and MERS answered and asserted counterclaims against Phoenix and crossclaims against Hutchins to cancel the quitclaim deed and the Hutchins mortgage. Aurora and MERS also asserted counterclaims and crossclaims against Phoenix and Hutchins, respectively, for declaratory judgment and quiet title. GreenPoint did not answer the complaint, leading to the district court's entry of default judgment. Hutchins responded to Phoenix's complaint by disclaiming all interest in the matter.

{12}     Aurora, MERS, and Phoenix cross-moved for summary judgment. Aurora and MERS argued, inter alia, that Aurora had standing to assert the 2009 foreclosure action against Hood, that Phoenix's claims were barred by res judicata, and that Phoenix's complaint was an improper collateral attack on the 2009 default judgment against Hood. Phoenix, by contrast, repeated its argument that the 2009 district court

4

lacked jurisdiction to adjudicate the Hood action because Aurora lacked standing to foreclose.

{13} Phoenix also argued in its summary judgment motion that Aurora committed fraud by attaching the Corporate Assignment of Mortgage to its 2009 foreclosure action against Hood. Phoenix's fraud claim alleged that Aurora was not a successor to GreenPoint and, therefore, lacked the right either to prepare the Corporate Assignment or to direct MERS to do so. According to Phoenix, Aurora's attachment of the Corporate Assignment to Aurora's 2009 complaint constituted a fraud on the district court that warranted setting aside the 2009 foreclosure judgment. In its complaint, Phoenix did not assert a claim to set aside the 2009 default foreclosure judgment for fraud. Rather, Phoenix first raised its fraud theory in its motion for summary judgment.

{14} The district court granted summary judgment to Aurora and MERS. The district court determined that Phoenix's suit was a collateral attack by a party in privity with or a successor-in-interest to Hood. The district court also concluded that the 2009 district court had jurisdiction over Aurora's foreclosure action, that the district court's default foreclosure judgment was therefore not void, and, accordingly, that Phoenix's claims were barred by res judicata. The district court declared that

5

Aurora owned the property in fee and that all adverse claims of Phoenix and Hutchins were barred. The district court consequently held Phoenix's motion for summary judgment to be moot. Phoenix filed a timely notice of appeal.

{15} The Court of Appeals reversed the district court. *Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2016-NMCA-010, ¶ 1, 365 P.3d 8, *cert. granted* 2016-NMCERT-001. The Court first determined that judgments may be challenged collaterally "where the challenge is based on an asserted lack of jurisdiction" of the court that rendered the judgment. *Id.* ¶ 11. The Court then considered whether the 2009 district court had subject matter jurisdiction to render the default foreclosure judgment against Hood. *Id.* ¶¶ 14-28. The Court noted that, under *Bank of New York v. Romero*, a plaintiff's failure to establish standing to foreclose is a jurisdictional defect and that a plaintiff must demonstrate that it had the right to enforce a note at the time of filing suit in order to establish standing. *Phoenix Funding*, 2016-NMCA-010, ¶¶ 15, 21 (citing *Bank of N.Y.*, 2014-NMSC-007, ¶ 17, 320 P.3d 1). The Court of Appeals determined that Aurora did not present sufficient evidence to establish that it was the holder of the note at the time it filed suit. *Phoenix Funding*, 2016-NMCA-010, ¶ 20. The Court of Appeals, therefore, concluded that Aurora lacked standing to foreclose, which consequently deprived the 2009 district court of subject

matter jurisdiction and voided the 2009 default foreclosure judgment against Hood. *Id.* ¶ 28. Because the Court of Appeals determined that the 2009 default foreclosure judgment was void, it held that Phoenix's claims against Aurora and MERS for declaratory judgment and quiet title were not barred by res judicata. *Id.* ¶ 30. Furthermore, because the Court of Appeals held that the 2009 default foreclosure judgment was void, it declined to rule on Phoenix's fraud argument. *Id.* ¶ 44.

{16} Aurora and MERS petitioned for a writ of certiorari. We granted the petition and issued the writ, exercising our jurisdiction under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972).

## II. DISCUSSION

## A. Standard of Review

{17} We review the district court's grant of summary judgment to Aurora and MERS de novo. *See Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 6, 310 P.3d 611. In the summary judgment posture, we review the facts and make all reasonable inferences from the record in the light most favorable to the party opponent of the motion. *Id.* "'Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citation omitted); *see also* Rule 1-056(C) NMRA.

**B.      The 2009 Foreclosure Judgment Was Not Void for Lack of Jurisdiction**

**1.      Because standing is a jurisdictional prerequisite only for causes of action created by statute, standing is not a jurisdictional prerequisite in actions to enforce a promissory note and foreclose on a mortgage**

{18}      We recently clarified the relationship between justiciability requirements and subject matter jurisdiction. *See Am. Fed. of State, Cty. & Mun. Emps. v. Bd. of Cty. Comm'rs of Bernalillo Cty.* (*AFSCME*), 2016-NMSC-017, ¶¶ 14-15, 373 P.3d 989; *Deutsche Bank Nat'l Trust Co. v. Johnston*, 2016-NMSC-013, ¶¶ 10-12, 369 P.3d 1046.   Unlike in the federal courts, the requirement of a plaintiff's standing to commence suit in New Mexico courts is not derived from a constitutional limitation on the power of the judicial branch. *Compare, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) ("[Anyone] who seek[s] to invoke the jurisdiction of the federal courts must satsify the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy . . . show[ing] that he has sustained or is immediately in danger of sustaining some direct injury . . . ." (internal quotation marks and citations omitted)), *with Am. Civil Liberties Union of N.M. v. City of Albuquerque* (*ACLU of N.M.*), 2008-NMSC-045, ¶ 9, 144 N.M. 471, 188 P.3d 1222 ("[S]tanding in our courts is not derived from the state constitution . . . ."). Because the requirement of a plaintiff's standing is not derived from a constitutional

limitation of the judiciary to decide cases or controversies, it is not a jurisdictional prerequisite to every cause of action that a New Mexico court is called to adjudicate. *See ACLU of N.M.*, 2008-NMSC-045, ¶ 9.

{19}    In some cases, however, justiciability requirements are jurisdictional prerequisites. For example, standing is a jurisdictional prerequisite where an action is created by statute and the statute specifies that only a limited class of plaintiffs who satisfy certain conditions may sue. *See Deutsche Bank*, 2016-NMSC-013, ¶ 11 ("'[W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action.'" (citation omitted)); *see also AFSCME*, 2016-NMSC-017, ¶ 31 ("Under New Mexico's Declaratory Judgment Act, standing—like ripeness—is a jurisdictional prerequisite."). Where a cause of action is created by statute, the Legislature empowers the courts to adjudicate a new kind of claim and, thus, the Legislature may condition the exercise of that power on the plaintiff's satisfaction of certain prerequisites. *See AFSCME*, 2016-NMSC-017, ¶ 14 ("If a statute creates a right and provides that only a specific class of persons may petition for judicial review of an alleged violation, then the courts lack the jurisdiction to adjudicate that alleged violation when the petition is brought by a

9

person outside of that class."). Hence, when a claim is created by statute, the justiciability requirements of standing, ripeness, and mootness can be jurisdictional. *See, e.g.*, *id.* ¶¶ 15-17 (explaining that because the Declaratory Judgment Act requires the demonstration of an "actual controversy," the justiciability requirements of ripeness and standing are necessary to establish a court's jurisdiction over a declaratory judgment action); *see also New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 17, 149 N.M. 42, 243 P.3d 746 (same).

{20}     By contrast, when a claim is *not* created by statute but rather was born of common law, the lack of the traditional justiciability prerequisites does not impair a court's jurisdiction. *See Deutsche Bank*, 2016-NMSC-013, ¶ 12 ("[A]n action to enforce a promissory note fell within the district court's general subject matter jurisdiction . . . because it was not created by statute."). New Mexico courts have general subject matter jurisdiction over common-law claims. *See* N.M. Const. art. VI, §§ 1, 13. For these claims, the justiciability doctrines are prudential, imposed not by the Constitution or by statute but by the judicial branch on itself to serve judicial economy and "the proper—and properly limited—role of courts in a democratic society . . . ." *Shoobridge*, 2010-NMSC-049, ¶ 16 (internal quotation marks and citation omitted). Yet, while the justiciability doctrines as applied to nonstatutorily

10

created claims are prudential, they are not toothless: A nonstatutorily created claim is also dismissable for want of the plaintiff's "prudential standing." *See, e.g.*, *Deutsche Bank*, 2016-NMSC-013, ¶¶ 9, 32 (holding that a bank's action to enforce promissory note was dismissable for failure to prove that the bank had standing at the time it filed its foreclosure complaint).

{21} Employing this framework, this Court explained in *Deutsche Bank* that because actions to enforce a promissory note and foreclose on a mortgage originated at common law and were not created by statute, standing in mortgage-foreclosure cases is a prudential concern. *See* 2016-NMSC-013, ¶¶ 12-13. The lack of a plaintiff's standing in an action to enforce a promissory note does not divest a court of subject matter jurisdiction. *See id.* Consequently, when a district court enters a foreclosure judgment against a defendant, that judgment cannot be collaterally attacked in a subsequent action as void for the reason that the plaintiff in the prior matter lacked standing. See *id.* ¶ 34. *Deutsche Bank* explained that this framework was a clear "practical implication[] of our holding that standing is not jurisdictional in mortgage foreclosure cases." *Id.* ¶ 33.

{22} Phoenix cannot successfully argue that the 2009 district court lacked jurisdiction over Aurora's foreclosure action because Aurora lacked standing. The

2009 district court had jurisdiction to adjudicate Aurora's complaint to enforce the Hood note and foreclose on the mortgage, and the 2009 district court had such jurisdiction independent of Aurora's standing. Accordingly, the district court's 2009 default foreclosure judgment was not void for lack of jurisdiction.

## 2. *Deutsche Bank*'s holding is not limited to nonnegotiable instruments

{23} Phoenix attempts to escape the reach of *Deutsche Bank* by contending that our holding in that opinion is limited to nonnegotiable instruments. Phoenix asserts that, unlike actions to enforce nonnegotiable instruments, actions to enforce negotiable instruments are a creation of the Uniform Commercial Code and did not originate at common law. Phoenix argues that because the Hood note was a *negotiable* instrument, *Deutsche Bank* does not apply, and consequently, the district court lacked subject matter jurisdiction and its default judgment against Hood is void.

{24} We are unconvinced; our holding in *Deutsche Bank* is not limited to nonnegotiable instruments. First, contrary to Phoenix's contention, *Deutsche Bank* involved a negotiable instrument, and, hence, its holding directly applies to this case. *See* 2016-NMSC-013, ¶¶ 2-3, 6, 13. Second and also contrary to Phoenix's contention, actions to enforce negotiable instruments, including promissory notes, originated at common law. "[T]he principles that govern negotiable instruments

12

today, currently embodied in the Uniform Commercial Code, long ago became part of the common law, and it is only because of their assimilation into the common law that they developed any legal significance." 22 Richard A. Lord, *Williston on Contracts*, § 60:1, at 484 (4th ed. 2002). These rules were once known as the *lex mercatoria* or the law merchant and formed a part of the English common law. *Id.* at 484-85 (citing *Gannon v. Bronston*, 55 S.W.2d 358, 362 (Ky. 1932)). Although the law merchant was first codified in the United States by the Uniform Negotiable Instruments Law (NIL), Lord, *supra*, at 486, it formed a part of New Mexico common law prior to New Mexico's adoption of the NIL in 1907. For instance, in *Farmers' State Bank of Texhoma, Okla. v. Clayton National Bank*, we made clear:

> The adoption of the Uniform Negotiable Instruments Act introduced no new system. Generally speaking . . . it is merely declaratory of the existing law merchant or common law. Prior to 1907, when we adopted it, a very few sections embodied all of our statute law of negotiable instruments. Our law was the common law, which we adopted in 1876 as the rule of practice and decision.

1925-NMSC-026, ¶ 17, 31 N.M. 344, 245 P. 543 (citing Section 1345, C.L. 1915). Hence, Phoenix's suggestion that actions to enforce negotiable instruments did not exist at common law is without merit, and accordingly, its attempt to limit *Deutsche Bank*'s holding to nonnegotiable instruments fails.

{25} We are also unpersuaded by Phoenix's assertion that standing is jurisdictional

13

for causes of action that derive from statutory codifications of common law. This argument is foreclosed by *Deutsche Bank*'s holding that, for purposes of an action to enforce a promissory note (which existed at common law and was later codified) standing is *not* a jurisdictional prerequisite. *See* 2016-NMSC-013, ¶¶ 12-14.

**3.     A plaintiff's failure to establish standing in an action to enforce a promissory note does not divest a district court of the power or authority to decide the particular matter presented**

{26}     Phoenix also attempts to evade the application of *Deutsche Bank* to this case. Phoenix argues that, despite *Deutsche Bank*, Aurora's failure to establish standing nevertheless deprived the district court of jurisdiction. According to Phoenix, Aurora's lack of standing divested the court of a jurisdictional concept separate from subject matter jurisdiction—namely, the power or authority to decide the particular matter presented. In support of this contention, Phoenix adverts to this Court's statement that "[t]here are three jurisdictional essentials necessary to the validity of every judgment: jurisdiction of parties, jurisdiction of subject matter and power or authority to decide the particular matter presented." *Heckathorn v. Heckathorn*, 1967-NMSC-017, ¶ 10, 77 N.M. 369, 423 P.2d 410; *see also In re Field's Estate*, 1936-NMSC-060, ¶ 11, 40 N.M. 423, 60 P.2d 945 (same). In *Heckathorn*, this Court concluded that the lack of *power or authority* to decide a particular case renders a

14

judgment void. *See* 1967-NMSC-017, ¶¶ 10-11. In this case, even though the 2009 district court had subject matter jurisdiction, Phoenix suggests that the court's judgment was nevertheless void because Aurora's failure to establish standing divested the court of the power or authority to decide the matter presented. We are unpersuaded.

{27} We have previously doubted but have not decided whether there is a true distinction between, on the one hand, a court's power or authority to decide the matter presented and, on the other, a court's subject matter jurisdiction. *See Sundance Mech. & Util. Corp. v. Atlas*, 1990-NMSC-031, ¶ 13, 109 N.M. 683, 789 P.2d 1250 ("[O]ne may doubt that the distinction serves any useful purpose."). We now clarify that a court's *power or authority to decide the particular matter presented* is not distinct from subject matter jurisdiction.

{28} In the past, this Court has simply used the formulation *power or authority to decide the particular matter presented* to refer to subject matter jurisdiction for a certain set of claims. New Mexico appellate courts have expressly considered a court's *power or authority to decide the particular matter presented* only where a statute created the claim at issue and specifically empowered a court to adjudicate that class of claim. *See Heckathorn*, 1967-NMSC-017, ¶¶ 10-11 (concluding that the trial

15

court lacked the power to grant a divorce because the parties had not satisfied the statutory condition of being New Mexico residents for at least one year); *Field's Estate*, 1936-NMSC-060, ¶¶ 32-34 (concluding that the probate court, under statute, had power or authority to classify certain claims filed against an estate); *Quintana v. State Bd. of Educ.*, 1970-NMCA-074, ¶¶ 7-8, 81 N.M. 671, 472 P.2d 385 (concluding that, under statute, the Court of Appeals lacked authority to review a decision of a state administrative board because that board lacked authority of review where the local administrative board never conducted a hearing). Accordingly, *the power or authority to decide the particular matter presented* is not a separate element of a court's jurisdiction, but rather a formulation we have used to refer to a court's subject matter jurisdiction over claims created by statute when the statute makes a court's power of review dependent upon certain prerequisites. In other words, *the power or authority to decide the particular matter presented* is simply an older way of describing the same legal proposition that this Court recently explained in *AFSCME* and *Deutsche Bank*: where the Legislature *creates* a cause of action and makes a court's power of review dependent upon the satisfaction of certain prerequisites regarding, for example, who may commence suit, those prerequisites are conditions on a court's subject matter jurisdiction. *AFSCME*, 2016-NMSC-017, ¶ 31; *Deutsche*

16

*Bank*, 2016-NMSC-013, ¶ 11.

{29}    We reject the assertion by Phoenix that a court's *power or authority to decide the particular matter presented* is distinct from the court's subject-matter jurisdiction. *See, e.g.*, *Heckathorn*, 1967-NMSC-017, ¶ 10.  That formulation, which concerns causes of actions that are created by statute, is unavailing to Phoenix.  As we explained, the 2009 district court's jurisdiction over the foreclosure action was not conferred by statute.  Accordingly, the cases in which we have referred to a court's *power or authority to decide the particular matter presented* are inapposite.

**C.    Phoenix Is Barred From Asserting a Claim That the 2009 Foreclosure Judgment Should Be Set Aside for Fraud**

{30}    We now turn to Phoenix's argument that the 2009 default foreclosure judgment should be set aside for fraud.  We granted certiorari to consider whether this Court should uphold current New Mexico law regarding the "procedures and requirements for collaterally attacking judgments" or instead adopt those of the Restatement (Second) of Judgments.  In its opinion, the Court of Appeals perceived tensions in New Mexico law concerning attacks on judgments and left "the task of resolving the tension, if any," to this Court.  *Phoenix Funding*, 2016-NMCA-010, ¶ 44 (quoting *State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 22, 135 N.M. 375, 89 P.3d 47 (inviting the Court of Appeals "'to explain any reservations it might harbor

17

over its application of our precedent'")). We decided to address this question because the Court of Appeals's discussion of Phoenix's fraud claim might leave the inaccurate impression that the Restatement (Second) of Judgments §§ 78-80 (Am. Law Inst. 1982) offers Phoenix some means to press its claim that is unavailable under New Mexico law. *See Phoenix Funding*, 2016-NMCA-010, ¶¶ 32-44.

**1.    New Mexico law regarding relief from judgments is consistent with the Restatement (Second) of Judgments**

{31}    Although the Restatement (Second) of Judgments jettisons the terminology of "direct attacks" and "collateral attacks," New Mexico courts have adhered to the use of those terms as shorthand for different ways of seeking relief from judgments. Despite that difference in terminology, we do not perceive New Mexico law concerning relief from final judgments to be inconsistent in substance with the position articulated by the Restatement (Second) of Judgments. Nor do we perceive any tensions in this area of law that are not readily relieved by reference to the course of judicial opinions that have applied it.

{32}    To begin, the distinction between direct and collateral attacks in New Mexico case law is well developed:

> A direct attack on a judgment is an attempt to avoid or correct it in some manner provided by law and in a proceeding instituted for that very purpose, in the same action and in the same court . . . . A collateral

18

attack is [either] an attempt to impeach the judgment by matters [outside of] the record, in an action other than that in which it was rendered [or] an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.

*Barela v. Lopez*, 1966-NMSC-163, ¶ 5, 76 N.M. 632, 417 P.2d 441 (quoting *Lucus v. Ruckman*, 1955-NMSC-014, ¶ 12, 59 N.M. 504, 287 P.2d 68 (1955) (quoting 34 Corpus Juris § 827, at 520-21 (Mack, ed. 1924)), *overruled on other grounds by Kalosha v. Novick*, 1973-NMSC-010, 84 N.M. 502, 505 P.2d 845 (1973)); *see also Hanratty v. Middle Rio Grande Conservancy Dist.*, 1970-NMSC-157, ¶¶ 4-5, 82 N.M. 275, 480 P.2d 165; *Arthur v. Garcia*, 1967-NMSC-205, ¶ 6, 78 N.M. 381, 431 P.2d 759; *Sanders v. Estate of Sanders*, 1996-NMCA-102, ¶ 23, 122 N.M. 468, 927 P.2d 23.

{33}     In *Bowers v. Brazell*, an early opinion of this Court, we employed a contrary terminology, wherein we used the term "direct attack" in a way that could be read to describe what we would now call a "collateral attack"—namely, an independent action to challenge the validity of a prior judgment. *See* 1922-NMSC-014, ¶ 3, 27 N.M. 685, 205 P. 715. But this Court later noticed that the development of the law specifically rendered the imprecise *Bowers* formulation anomalous. *See Apodaca v. Town of Tome Land Grant*, 1971-NMSC-084, ¶ 5, 83 N.M. 55, 488 P.2d 105 ("[T]he

19

later cases clearly suggest that under the definitions of direct and collateral attacks adopted therein, the present suit would fall within the definition of a collateral attack . . . ." (citing *Barela*, 1966-NMSC-163; *Lucus*, 1955-NMSC-014)). We are aware that courts around the country have not always been consistent regarding the referents of the terms "direct attack" and "collateral attack." *See generally* Restatement (Second) of Judgments, ch. 5 intro. note at 141-42. We now emphasize that "direct attack" refers to a litigant's attempt to nullify a judgment through a Rule 1-060(B) motion in the same action and with the same court that rendered the judgment. A "collateral attack," by contrast, refers to a litigant's attempt to nullify a judgment and makes that attempt in a separate action and not through a Rule 1-060(B) motion.

{34} A motion under Rule 1-060(B) is the proper procedure to assert a direct attack on a judgment—*i.e.*, a challenge filed in the same court and in the same manner in which the contested judgment was issued. *See, e.g.*, *Barela*, 1966-NMSC-163, ¶¶ 2, 6 (moving under Rule 1-060(B) to vacate a judgment for lack of jurisdiction over the defendant); *Sanders*, 1996-NMCA-102, ¶ 22 ("When proceeding by motion under the specific subdivisions of Rule 60(B), the presumption is that the motion must be filed in the district court and in the action in which the judgment was rendered.").

{35}    But Rule 1-060(B) does not provide the specific ground on which a litigant may assert a collateral attack. Although Rule 1-060(B)(6) contemplates independent actions for relief from judgment, it neither creates nor provides the authority for such actions. As Rule 1-060(B)(6) states, it "does not limit the power of a court to entertain an *independent action* to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." (Emphasis added). We observe that the federal courts of appeal have emphasized that this "independent action," as noted in the analogous Federal Rule of Civil Procedure 60(d)(1), "was meant to refer to a procedure which has been historically known simply as an independent action in equity to obtain relief from a judgment. This action should under no circumstances be confused with . . . the 60(b) motion [for relief from a final judgment or order]." *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 78 (5th Cir. 1970) (footnote omitted)); *see also Kinder Morgan CO₂ Co. v. State Taxation & Revenue Dep't*, 2009-NMCA-019, ¶ 11, 145 N.M. 579, 203 P.3d 110 ("[T]he federal construction of Rule 60(b) is persuasive authority for the construction of Rule 1-060(B)."). In fact, the Court of Appeals has already also made this point clear. *See Sanders*, 1996-NMCA-102, ¶ 1 ("Rule [1-0]60(B) motions must normally be filed in the original cause of action in the same court in which the challenged judgment was

rendered and may not be relied upon to launch a collateral attack in a different cause of action or a different court.").

{36} In contrast to the straightforward procedure for a direct attack under Rule 1-060(B), New Mexico cases have recognized a limited number of ways in which a litigant may seek relief from a prior judgment in a proceeding separate from that in which the judgment was rendered. First, a litigant may file an independent action to set aside a judgment for fraud, accident, or mistake. *Sanders*, 1996-NMCA-102, ¶ 15. New Mexico has long recognized this cause of action as a matter of common law. *See Apodaca*, 1971-NMSC-084, ¶¶ 2, 7 (reversing the dismissal of a complaint in equity attacking the validity of a prior judgment); *Brown v. King*, 1959-NMSC-088, ¶ 9, 66 N.M. 218, 345 P.2d 748 ("[A]n equity action lies to avoid judgment procured by fraud."); *Day v. Trigg*, 1922-NMSC-012, ¶ 7, 27 N.M. 655, 204 P. 62 (deciding on the merits whether a judgment "may be vacated through an independent proceeding . . . solely upon the ground that it was obtained by false testimony"); *Sanders*, 1996-NMCA-102, ¶¶ 10-17 (assuming and describing an independent action for relief from judgment).

{37} Second, a litigant may file an independent action asserting that a previously rendered judgment was void for lack of jurisdiction. *See, e.g.*, *Bonds v. Joplin Heirs*,

1958-NMSC-095, ¶ 13, 64 N.M. 342, 328 P.2d 597 (upholding collateral attack on judgment because the trial court that rendered judgment "failed to obtain jurisdiction of the parties or the subject matter"). Such an action may be properly filed as a claim for declaratory relief. *See Heimann v. Adee*, 1996-NMSC-053, ¶ 36, 122 N.M. 340, 924 P.2d 1352 (recognizing that a claim seeking a declaration that the prior judgment was void for lack of jurisdiction was a collateral attack on the judgment); *see also* Restatement (Second) of Judgments, ch. 5 intro. note at 138-39 ("When relief from a judgment may properly be sought through an independent action, a declaratory proceeding is usually the functional equivalent of the older equitable suit to enjoin enforcement of a judgment."). And an action collaterally attacking a previous judgment as void for lack of jurisdiction may also be filed in "other proceedings long after the judgment has been entered." *Chavez v. Cty. of Valencia*, 1974-NMSC-035, ¶ 15, 86 N.M. 205, 521 P.2d 1154 (citations omitted).

{38} Third, a litigant may argue (either based on fraud, accident, mistake, or lack of jurisdiction) for relief from judgment in a proceeding both separate from that in which the judgment was rendered and in which the judgment is relied on for a claim or defense. This may occur, for example, where a plaintiff attempts to use a prior judgment as a basis to achieve some further relief, and the defendant, through a

23

counterclaim or motion to dismiss, defensively argues that the court should set aside the judgment for one of the aforementioned reasons. *See, e.g.*, *Hanratty*, 1970-NMSC-157, ¶¶ 3, 6-7 (characterizing a counterclaim in a separate proceeding as a collateral attack but dismissing because judgment was not obviously invalid); *Barela*, 1966-NMSC-163, ¶ 5 (noting that "impeaching or overturning of the judgment" may be necessary to the success of an action that has an independent purpose); *St. Paul Fire & Marine Ins. Co. v. Rutledge*, 1961-NMSC-024, ¶¶ 6-10, 68 N.M. 140, 359 P.2d 767 (upholding dismissal of writ of garnishment because the prior judgment was void for want of personal jurisdiction over the defendant); *cf.* Restatement (Second) of Judgments § 80, cmt. b, illus. 1 (providing that a litigant may defend against a contempt proceeding on the ground that the underlying judgment awarding injunction is invalid).

{39} In light of the development of New Mexico case law, we do not perceive any irreconcilable inconsistency between our law and the Restatement position regarding relief from judgments. As described above, in New Mexico, a litigant may seek relief from judgment through a direct attack by a Rule 1-060(B) motion, a collateral attack by an independent action in a proceeding separate from that in which the judgment was rendered, and, in some circumstances, a collateral attack by way of a

24

counterclaim or motion to dismiss in a proceeding separate from that in which the judgment was rendered. The methods by which a litigant may seek relief from a prior judgment in New Mexico align with those broadly described by Sections 78 through 80 of the Restatement (Second) of Judgments. Phoenix sought to overturn the 2009 default foreclosure judgment in a separate 2012 proceeding, first, by claiming in its complaint that the judgment was void for lack of jurisdiction and, later, in the summary-judgment posture, by claiming that the 2009 judgment was procured by fraud. The Restatement does not add anything to how New Mexico law categorizes and disposes of Phoenix's collateral attack.

**2.      Phoenix's fraud claim is procedurally barred**

{40}     Phoenix may not pursue its claim that the 2009 default foreclosure judgment should be set aside for fraud. Phoenix points to Section 80 of the Restatement, but it is unavailing. This section allows for relief from judgment "[w]hen a judgment is relied upon as the basis for a claim or defense" where the litigant has made an "appropriate pleading" and establishes that "the convenient administration of justice would be served by determining the question of relief in the course of the subsequent action." Restatement (Second) of Judgments § 80. Phoenix did not make an "appropriate pleading," however, and its fraud claim is procedurally barred.

{41} A litigant may not assert a new claim, long after discovery has commenced, through argument in a brief supporting or opposing summary judgment or in a cross motion for summary judgment. Once a case has arrived at the summary judgment posture, the proper procedure for a plaintiff to assert a new claim is to amend his or her complaint. We recognize that this is the well-settled federal law. *See, e.g.*, *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. Appx. 659, 667 (6th Cir. 2012); *Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez*, 659 F.3d 42, 52-53 (1st Cir. 2011); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); *Fischer v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990). And the "federal construction of the federal rules is persuasive authority for the construction of New Mexico rules." *Albuquerque Redi-Mix, Inc. v. Scottsdale Ins. Co.*, 2007-NMSC-051, ¶ 9, 142 N.M. 527, 168 P.3d 99. We also note that there are good reasons supporting this procedural bar. To conserve judicial resources and prevent unfair surprise, our liberalized pleading rules "do not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case." *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275,1279 (10th Cir. 2004); *cf. Dominguez v. Dairyland Ins.*

26

*Co.*, 1997-NMCA-065, ¶ 17, 123 N.M. 448, 942 P.2d 191 ("Where a motion to amend comes late in the proceedings and seeks to materially change [p]laintiff's theories of recovery, the court may deny such motion.").

{42}    Phoenix's 2012 complaint did not assert an independent claim to set aside the judgment for fraud. Rather, Phoenix asserted a claim against Aurora and MERS only for declaratory judgment that the 2009 default foreclosure judgment was void for lack of standing and a claim for quiet title. Phoenix first asserted its claim that the 2009 judgment should be set aside for fraud in its motion for summary judgment. This was improper, and Phoenix's claim for relief from judgment because of fraud is accordingly barred.

{43}    Moreover, we note that Phoenix's claim for relief from judgment, founded on its allegation that the Corporate Assignment of Mortgage was fraudulent, likely fails on the merits. It has long been the law "that [a] court will not set aside a judgment because it was founded on a fraudulent instrument . . . .'" *Day*, 1922-NMSC-012, ¶ 14 (quoting *United States v. Throckmorton*, 98 U.S. 61, 66 (1878)). We make this observation because the mortgage industry in New Mexico requires stability and because we disfavor the uncertainty that Phoenix has attempted to inject through its unmeritorious attempt to overturn a settled foreclosure judgment.

27

## III.  CONCLUSION

{44}  For the reasons set forth above, we reverse the judgment of the Court of Appeals, reinstate the district court's 2012 grant of summary judgment to Aurora and MERS, and remand to the district court with instructions to dismiss Phoenix's fraud claim as procedurally barred.

{45}  **IT IS SO ORDERED.**

_____
                                    **JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**JAMES J. WECHSLER, Judge, sitting by designation**

29